**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| WARSHAHENNEDIGE A R NISHANTHA FERNANDO, | ) ) ) | |
| Petitioner, pro se, | ) ) | **MEMORANDUM OPINION AND RECOMMENDATION** |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | 1:10CV257 1:07CR38-1 |
| Respondent. | ) | |

Petitioner Warshahennedige Fernando, a federal prisoner, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (docket no. 49).[1] Petitioner was indicted on one count of using the internet to attempt to entice a person under the age of 18 to engage in sexual activity in violation of 18 U.S.C. § 2422(b) and one count of attempting to use the internet to transfer obscene matter to a person under the age of 18 in violation of 18 U.S.C. § 1470 (docket no. 1).  He went to trial on these charges and was convicted on both counts (docket no. 22). Petitioner was later given concurrent sentences of 120 months of imprisonment on each count (docket no. 31).  Petitioner did pursue a direct appeal, but he was unsuccessful in challenging his convictions or sentences (docket nos. 41-43).  He then began pursuing relief under Section 2255.  Respondent has filed a response to Petitioner's motion seeking to have it denied (docket no. 60), and Petitioner has filed a reply (docket no. 65).  His motion is now before the court for a decision.

---

[1]  This and all further cites to the record are to the criminal case.

## PETITIONER'S CLAIMS

Petitioner lists only three claims for relief in his motion, one for ineffective assistance of counsel at trial, one for ineffective assistance of counsel on appeal, and one for prosecutorial misconduct. Each of the claims contains numerous subparts and allegations which will be discussed with more particularity below.

## FACTS

The basic facts of the case, as follows, are set out in the government's response brief and are supported by the trial transcripts in the case.

> On August 1, 2006, forty-two year old Fernando, using the screen name "thicktoolngso," initiated an online conversation with a person using the screen name "Kimmie14fun" ("Kimmie14"). (Trial Tr. 9). Unbeknownst to Fernando, "Kimmie14" was not a fourteen year-old female. Rather, "Kimmie14" was Detective Chrystal Overcash, an undercover Guilford County Sheriff's Deputy, who was posing as a fourteen year old female. (Trial Tr. 3-5). Detective Overcash, using the screen name "Kimmie14fun," was sitting idle in a Yahoo chat room when Fernando, who was also in the chat room, sent her an instant message, which led to a series of online conversations. (Trial Tr. 9). These online conversations were introduced over defense counsel's objection, as Government's Exhibit 2 and are attached hereto as Exhibit A. (Trial Tr. 11). During their first chat, "Kimmie14" twice advised Fernando that she was fourteen years old and Fernando asked (also twice) "Kimmie14" if her parents were checking on her. (Trial Tr. 23-25; Exhibit A, 1,2). Just four minutes after "Kimmie14" gave her age as fourteen (the second time), Fernando told her that he was "looking for fun." (Trial Tr. 24; Exhibit A, 2). When "Kimmie14" asked "whattya mean by fun?",Fernando responded "sexual fun. . . ." (Trial Tr. 24; Exhibit A, 2).
>
> Over the next several days, Fernando initiated four online chats with "Kimmie14" during which he repeatedly expressed his desire to show "Kimmie14" his genitals. (Trial Tr. 19,20; Exhibit A, 3-18).

On August 8, 2006, Fernando contacted "Kimmie14" and expressed his desire to show her a picture of his genitals. (Exhibit A, 6). Fernando then emailed "Kimmie14" a picture of himself holding his erect penis ("this is a pic of my c**k"), an image that Fernando called "holding_1." (Trial Tr. 19; Exhibit A, 6).1 Detective Overcash received the image at 12:55:59 PM and exclaimed: "wow!". (Trial Tr. 19; Exhibit A, 6). During this chat, Fernando emphatically stated that "Kimmie14" should delete the picture before her parents discovered it. (Trial Tr. 33; Exhibit A, 6). Fernando repeatedly asked "Kimmie14" if she had deleted the email. (Exhibit A, 7-8). Fernando, referring to the picture of his erect penis, asked "Kimmie14" if she would like to "see that for real?"; "touch it" and later, "lick it...like an ice cream..;"). (Trial Tr. 27-28, 35; Exhibit A 7,8,13). Fernando repeatedly asked "Kimmie14" about her parents. (Trial Tr. 30, 37; Exhibit A, 1,2,3,5,6,12,14,16).

As their chat progressed, Fernando advised "Kimmie14" that he wanted to meet with her in person. (Trial Tr. 29-30; Exhibit A, 8). At 1:12:59 p.m. on August 8, 2006, Fernando stated: "So u wanna see that for real?" (Trial Tr. 33; Exhibit A, 8). A few minutes later, Fernando continued: "and let you touch if you want." (Trial Tr. 34; Exhibit A, 9). During this same chat, "Kimmie14" agreed that she would meet Fernando at Borders Bookstore on High Point Road in Greensboro at 2:00 p.m. the next day. (Trial Tr. 36; Exhibit A, 11,15,18). Fernando described his physical appearance and advised "Kimmie14" that he would be driving a red mini van. (Exhibit A, 11).

After the meeting was arranged, "Kimmie14" emailed Fernando a picture of fellow employee Tracy Nelson, who was nineteen years old at the time the picture was taken. (Trial Tr. 19-22). Fernando received this picture near the end of their last online chat (at 2:36:00 p.m.) on August 8, 2006. (Trial Tr. 22, Exhibit A, 17). At the very end of their conversation, Fernando stated: "I am not supposed to . . . show my c**k to a young girl like you . . . anyway u will be doing all these in a cpl of years." (Trial Tr. 37; Exhibit A, 18). Fernando then asked "Kimmie14" if she was "gonna come with cops?" and, in conclusion, stated: "get ready to play with my c**k...;." (Trial Tr. 37-38; Exhibit A, 18).

On August 9, 2006, Detectives Robert "Allen" Cheek and Charlotte Rogers, along with numerous deputies, conducted surveillance of the parking lot area in front of Borders Bookstore. (Trial Tr. 97, 188).

Shortly after 1:00 p.m., the detectives observed a red mini van circling the parking lot. (Trial Tr. 98). Tracy Nelson, who was posing as "Kimmie14," was stationed in front of Borders. (Trial Tr. 84-87). Fernando arrived in a red mini van, exited his vehicle and approached Nelson. (Trial Tr. 86, 98). Fernando asked Nelson twice if she was "Kimmie14." (Trial Tr. 86). Nelson advised Fernando that she was in fact "Kimmie14" and a short conversation ensued. (Trial Tr. 86). As the two walked toward Fernando's van, the surveillance team converged and placed Fernando under arrest. (Trial Tr. 87). According to Detective Cheek, Defendant was wearing clean khaki pants, a collared shirt, dress shoes and smelled of cologne. (Trial Tr. 189).

At 3:35 p.m. on August 9, 2007, Fernando waived his Miranda rights and explained, in his words, what happened. (Trial Tr. 100-104). At trial, Detective Rogers read verbatim Fernando's statement. (Trial Tr. 100-105).2 Fernando admitted that he had been chatting with "Kimmie14" for approximately one week and that he had been using the screen name "thicktoolngso." (Trial Tr. 103- 104). Fernando stated: "I told the girl that I just wanted to meet her and maybe she could touch me (penis), yeah." (Trial Tr. 103). Fernando also stated: "I made a bad decision. I knew it was against the law but I never thought that far ahead." (Trial Tr. 104). In his signed statement, Fernando did not mention that he believed "Kimmie14" to be an adult, nor did he mention receiving the photo of Tracy Nelson. (Trial Tr. 102-104).

(Docket No. 60 at 2-6 (footnotes omitted, citations in original referring to Trial Transcript and Exhibits to government's brief).)

Petitioner countered the evidence just set out with his own testimony. He freely admitted to being the person that chatted with "kimmie14fun,"[2] that the conversations were of a sexual nature, and that he did send her a nude picture of himself. Nevertheless, he maintained that he never believed that she was 14 years old despite her statements that she was, and that he thought she was an adult (*see,*

[2] The government's brief capitalized "Kimmie14fun;" however, the chat transcripts show that it was not capitalized. The court will follow the transcripts.

*e.g.*, trial tr. 138, 139, 140, 144-147, 172).  He testified that he knew her listed profile age of 114 was not correct, so he assumed her stated age of 14 was not either *(id. at 138)*, that some of the language she used did not seem to be that of a 14-year-old (*id.* at 144-45), that he thought her references to her "parents" were code words for a spouse or supervisor at work (*id.* at 171), that he believed that she was only playing a game by pretending to be 14 (*id.* at 138), and that he was only playing along with her references to being 14 or having parents watching her.  He also claimed that he had no intention of engaging in sexual contact with "kimmie," who he believed to be an adult, when he went to meet her at the bookstore, but instead only went because he was curious to see who she was (*id.* at 153-54, 179-81).  He supported this with testimony that he was on his lunch break at the time and that he was sweaty and "stinkish" from having worked all morning in a field at North Carolina A & T, where he was employed (*id.* at 153).  He testified that, having satisfied his curiosity by meeting her, he was in the process of leaving when he was arrested.  Regarding his statement to police, he testified that the words in the statement were typed by the officers and were not his exact words.  He stated that he told them he had never talked to minors on his computer, did not know "kimmie's" age,  and was very nervous at the time he gave the statement (*id.* at 155-58).  He added that he may have said that chatting with a 14-year-old was wrong, but that he had not chatted with one (*id.* at 160).  On cross-examination, Petitioner admitted to sexual chats with other people, but maintained that they were all adults (*id.* at 163).

**DISCUSSION**

**<u>Claim One</u>**

Petitioner's first claim is for ineffective assistance of counsel at the trial level. In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner must demonstrate that specific errors were made by counsel. *United States v. Cronic*, 466 U.S. 648, 667 (1984). He is not entitled to a hearing based upon unsupported, conclusory allegations. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing, a habeas petitioner must come forward with some evidence that the claim might have merit), *abrog'n on other grounds recog'd, Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, Petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Petitioner's first claim is that his trial attorney did not properly object to and/or contest the government's evidence. He states in the memorandum supporting his motion that counsel failed to object as needed at trial, did not strongly test the government's case, did not object to the statements of witnesses, did not object to

or cross-examine witnesses regarding contradictory statements, and did not challenge "the details of the chat log, the lack of empirical data regarding Petitioner's Internet account, and other crucial details during the trial" (docket no. 50 at 3). Except as set out below in conjunction with his other claims of ineffective assistance, Petitioner does not explain or expound upon these allegations. Further, a review of the transcripts of the case reveals that counsel did make objections, perform cross-examinations of witnesses, and challenge the government's case. This first claim is exactly the type of generalized and conclusory allegation that is not sufficient to proceed. This claim should be denied.

Petitioner next claims that his attorney improperly failed to use "several key witnesses" (*id.*). He lists a North Carolina A & T student who helped him harvest vegetables in the morning just prior to his arrest, his work supervisor, and his wife as being such witnesses. He states that the student and supervisor could have corroborated that he was working in the field on the morning he went to meet "kimmie" at the bookstore and that his wife could have testified to "authenticate [his] character." He also states that "[a]ffidavits are available and forthcoming." He attaches an affidavit from his wife to his reply brief, but no affidavits from the student or supervisor are present in the record. This renders his claim conclusory as to those witnesses.

As for Petitioner's wife, he does state that she would have testified that Petitioner "never had any interest for people under 18 years or in sexual activities

with children or adolescents" during their 18-year marriage (docket no. 65, ¶ 4).  This would have, at most, been of very limited use to Petitioner.[3]  Such an interest, if it existed, would not normally be one that a person would necessarily share even with a spouse.  Moreover, unless Petitioner's wife was aware of his online sexual chats,[4] she would have had to admit on the stand that she was unaware of Petitioner's chats and their sexual nature, thereby demonstrating that Petitioner had sexual interests and activities of which she was unaware.  This would have rendered her testimony practically useless in light of the overwhelming evidence against him.  Petitioner's attorney did not err in not presenting it and, in any event, could not have prejudiced him.  This claim should also be denied.

Petitioner's next contention is that his attorney did not strongly cross-examine Detective Overcash on a contradiction in her testimony.  He adds that the attorney did not strongly cross-examine government witnesses overall and did not meaningfully cross-examine a government forensics technician (docket no. 50 at 4).  As to all witnesses except Detective Overcash, this claim is conclusory.  Petitioner does not identify most of the witnesses to which he is referring.  He also does not

---

[3]  This assumes that Petitioner would have been successful in having the evidence admitted at all.

[4]  There is nothing to suggest that she was.  Petitioner's testimony that he was not supposed to be engaging in sexual chats because he was married with two kids (trial tr. at 177) and the fact that he was carrying on his conversations at work, suggests that she was not aware of the chats.

suggest how his attorney should have cross-examined the forensics technician in order to help his case.

As for Detective Overcash, Petitioner claims that she contradicted herself when she testified at one point on direct examination that she did not know that she was in an "'Adult Romance'" chat room when Petitioner contacted her. On cross-examination, she stated that she usually entered "'General chat rooms.'" He asserts that counsel "ignored this contradiction" (docket no. 50 at 4). Although Petitioner is specific in this allegation, it does him no good. First, the statements as quoted by Petitioner do not contradict one another. Second, Detective Overcash actually testified on direct examination that she entered chat rooms related to North Carolina that had 40 or more people in them and that she did not pay attention to what each room was (trial tr. at 5). On cross-examination, she testified that she went into "general romance room[s]" and not "adult romance rooms[s]" (docket no. 54-55). Again, these statements do not contradict one another. Further, it is not apparent why this mattered. Whatever chat room Petitioner and "kimmie14" were in, Detective Overcash testified that it was easy to create a profile to get around any age restrictions, her profile age of 114 suggested that she had done this, and she repeatedly told Petitioner that she was 14. It is not clear what more counsel could have done on this subject. Petitioner has demonstrated neither error nor prejudice.

Petitioner next faults counsel for not putting into evidence his field notes from work on the morning he was arrested at the bookstore, the results of a search of his

van, and the results of the searches of his computers.  He claims that the notes and search results contained "<u>no</u> trace of any condemning evidence" and were relevant to his state of mind because they contained "<u>no</u> evidence to indicate that Petitioner had a propensity or predilection to engage in sexual misconduct with any minor" (docket no. 50 at 5).  Petitioner's claim is at least partially incorrect.  Counsel did elicit testimony on cross-examination that the search of Plaintiff's computers revealed no child pornography or visits to child pornography websites (trial tr. at 128-29).  Nevertheless, the jury convicted him, likely based on his own words in the online chats which repeatedly indicated that he believed that "kimmie14fun" was a minor and that he wanted to engage in sexual acts with her.  There is no indication that introducing the fact that Petitioner's van and notes did not contain materials suggesting that he was interested in sex with minors would have altered that outcome.  Again, he has not shown any error by his attorney or any prejudice.

Petitioner next makes another set of conclusory or unexplained allegations by stating that counsel ignored "misleading, faulty, and incomplete evidences, including missing portions of the chat log transcripts and the unreliable police statements," did not capitalize on "obvious contradictions" by the government decoy who met Petitioner at the bookstores and Detective Overcash, and did not introduce a video showing Petitioner's arrest which would have contradicted "many of the statements of the government's main witness" (docket no. 50 at 5).  These are yet more conclusory statements insufficient to maintain a claim.  Petitioner does not identify

the contradictions, put forward the missing evidence, or even explain what was in it that would have changed the outcome in his case. These allegations are too conclusory to proceed.

Petitioner also accuses counsel of failing to defend him using his positive work history and lack of criminal history, allowing "inflammatory" photographic blow-ups of Petitioner's nude torso to be introduced at trial, and failing to argue that Petitioner reasonably believed that the government decoy and "kimmie14fun" were adults. Petitioner's prior history would have been irrelevant. The fact that he did not commit other crimes and that he was good at his job did not speak to his intent to commit the crimes with which he was charged or his belief about "kimmie's" age. As for the photos, Petitioner has not provided a basis on which counsel could have excluded the nude photo he sent to "kimmie14fun." Finally, large segments of counsel's closing argument, as would be expected, actually were devoted to establishing that Petitioner did not believe that "kimmie14fun" or the government decoy at the bookstore were minors (trial tr. at 236-244, 251-255). This set of claims also fails for those reasons.

Petitioner next alleges that counsel failed to properly explore whether members of the jury were exposed to negative media coverage and other publicity surrounding the case. He claims that counsel should have "tested the jurors or requested a change of venue" (docket no. 50 at 6). Again, Petitioner puts forth no real basis for his claim. He has not shown that any of the jurors in his case had seen

any media coverage. Also, he points to the coverage as consisting of one newspaper article, two or three television news reports, unidentified internet coverage, and a "special write-up" by the local Sheriff's Department. Petitioner has not shown that the coverage was so pervasive that the jury would have necessarily seen it or so prejudicial that it would have influenced their verdict if they had. Again, his claim is really just a series of conclusory statements. He has not demonstrated either the error or the prejudice necessary for an ineffective assistance of counsel claim.

Petitioner further maintains that counsel failed him by not seeking an entrapment instruction. In order to be entitled to such an instruction, there would have had to have been evidence to show solicitation by the government to commit a crime and a lack of predisposition to commit that crime. *See United States v. Hsu*, 364 F.3d 192, 200 (4th Cir. 2004). Entrapment involves governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party. *United States v. Sligh*, 142 F.3d 761, 763 (4th Cir. 1998). Here, Detective Overcash did nothing more than create a screen name and profile and enter a chat room. Petitioner approached her in the chat room, Petitioner brought sex into the conversation, Petitioner sent her a nude photograph, and Petitioner suggested that they meet and engage in sexual activities. He did these things after she told him she was 14 years old. Petitioner's only possible defense was that he did not really believe that she was 14. There was no basis for an

entrapment instruction; and, in fact, arguing a frivolous entrapment defense as an alternative to the more viable defense of lack of belief in "kimmie14's" age may have actually confused the jury or harmed Petitioner's case. Arguing that he did not believe she was 14, but that he was entrapped if he did believe it, would not have been tenable, particularly in light of the abundant evidence that, whatever Plaintiff believed about "kimmie14's" age, he was not pushed, forced, or enticed into any sexual misconduct with her. He was the initiator. Petitioner cannot show error or prejudice as to this claim.

Finally, Petitioner argues that counsel improperly failed to contest the admission of a statement he gave to police on the basis that it was involuntarily given while Petitioner was under duress. As with so many of his other claims, Petitioner provides absolutely no evidentiary basis upon which counsel could have filed a motion to suppress the statement. The statement was given after Petitioner was read his rights, signed a written waiver, and initialed every right saying that he understood them (trial tr. at 100, 189-190). He then spoke to police and answered their questions before signing a typed statement (*id.* at 190-91). Certainly, no basis for suppression is apparent in the record. This claim should be denied, as should Petitioner's entire ineffective assistance of counsel claim dealing with trial and pretrial matters.

## Claim Two

Petitioner's next claim is denominated as one alleging ineffective assistance of appellate counsel. Like the prior claim it has several subparts. The first few actually deal with allegations concerning Petitioner's sentencing counsel, while later allegations do deal with Plaintiff's appeal. The court will quickly address the sentencing allegations under the same standards for ineffective assistance already set out before moving on to the appellate allegations.

Petitioner claims that sentencing counsel did not show him the final copy of the Presentence Report (PSR) prior to sentencing, berated him when he had the sentencing hearing delayed to see the document, made only weak attempts to inform the court of Petitioner's prior good behavior, did not point out his low risk of recidivism as reflected in a presentencing psychosexual evaluation, and did not argue that the statutory mandatory minimum sentence of 120 months was cruel and unusual punishment (docket no. 50 at 8-9). The problem with most of Petitioner's arguments is that he received the absolute minimum sentence possible. Therefore, no matter what sentencing counsel did or did not do or how professional or unprofessional their actions were, Petitioner cannot show prejudice because his sentence could not possibly have been lower than it was.[5]

---

[5] This is not to say that counsel actually did behave improperly. There is no need to decide the issue because Petitioner cannot show any prejudice.

The one potential exception to the prior statement is Petitioner's contention that counsel should have argued that the statute imposing the 120-month minimum sentence was unconstitutional because it amounted to cruel and unusual punishment. Unfortunately for Petitioner, he also cannot show prejudice from the failure to raise that argument. As one court recently noted in discussing a cruel and unusual punishment argument in conjunction with a similar case where a defendant was subjected to a thirty-year mandatory minimum sentence for soliciting sexual activity from a child over the internet, the ability of the courts to consider arguments like the one Petitioner claims counsel should have raised is severely circumscribed. *United States v. Farley*, 607 F.3d 1294, 1343-45 (11th Cir.) (citing *Harmelin v. Michigan*, 501 U.S. 957 (1991), *cert. denied*, ___ U.S. ___, 131 S. Ct. 369 (2010) and thoroughly discussing subsequent case law). The court in *Farley* ultimately concluded that even the thirty-year sentence did not amount to cruel and unusual punishment under prevailing Supreme Court precedent. To be sure, Petitioner would not have fared better even if counsel had raised a similar claim in this case as to his ten-year sentence. All of Plaintiff's ineffective assistance of counsel claims related to sentencing should be denied for failure to demonstrate prejudice.

Turning now to Petitioner's claims which are truly based on allegations of ineffective assistance of appellate counsel, such claims are judged using the *Strickland* test set out previously. *See Lawrence v. Branker*, 517 F.3d 700, 708-09 (4th Cir.), *cert. denied*, 129 S. Ct. 162 (2008). Appellate counsel need not raise on

appeal every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745 (1983); *see also Smith v. Murray*, 477 U.S. 527 (1986); *Evans v. Thompson*, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound trial strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Winnowing out weaker arguments to press forward with more important points is part of effective appellate advocacy. *Jones*, 463 U.S. at 751-52. Prejudice can be shown by demonstrating that "'counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" *Bell v. Jarvis*, 236 F.3d 149, 180 (4th Cir. 2000) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).

Petitioner contends that appellate counsel failed him because they did not send him mail marked as confidential so that it would not be opened by jail authorities, did not provide Petitioner with a copy of the appellate brief until after it was filed, and did not include claims that Petitioner asked be included. He states that the issues he wished to raise were "the issue of incompleteness" of the chat transcripts, "errors regarding evidence which had been presented to the jury," and "the issue that the government made false claims, presented false facts, and made untruthful statements" (docket no. 50 at 9). Petitioner sets out his proposed arguments at great length. Boiled down to their essentials, Petitioner wanted appellate counsel to reargue the evidence and convince the appeals court to overrule the jury's determination that he was guilty. He also wanted appellate

counsel to argue an entrapment defense and that Plaintiff never took a substantial step toward enticing a person under the age of 18 to engage in sexual activity because he did not travel to the bookstore to engage in such activity (*id.* at 10-11).

Petitioner has not even alleged any actual prejudice from counsels' mailing methods. As for the allegation that he was not shown the brief supporting his appeal until after it was filed, this cannot have prejudiced him unless he can point to some meritorious claim that was left out because he did not see the brief in time to have counsel include it. Therefore, his ineffective assistance of appellate counsel claims turn on his allegations that important claims were left out.

Regarding the alleged incompleteness of the transcripts, this claim is again entirely conclusory. Petitioner has not shown that the transcripts were incomplete, much less that relevant or important sections were missing. For that reason, counsel could not have successfully based an appellate claim on that allegation. As for claims involving the weight or quality of the evidence and the government's alleged false statements, these are not ordinarily proper issues for appeal unless, perhaps, Petitioner could demonstrate insufficiency of the evidence, perjured testimony, or a successful defense that was not allowed or not presented by trial counsel. He can do none of these things.

Petitioner could not have shown insufficiency of the evidence on appeal. The verdict would have been affirmed if "'viewing the evidence in the light most favorable to the prosecution, the verdict [was] supported by "substantial evidence."'" *United*

*States v. King*, 628 F.3d 693, 700 (4th Cir. 2011) (quoting *United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006)). "'Substantial evidence' consists of 'evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *Id.* The facts set out in the early part of this Recommendation would easily allow a jury to find Petitioner guilty based on his own statements to "kimmie14fun" regarding his awareness of her age and the fact that he knew he was not supposed to be showing her nude pictures or meeting her for sexual activity. It is true that Petitioner offered alternative innocent explanations for these statements; however, the jury, as it was entitled to do, rejected his version of the story. That circumstance would not provide Petitioner with a successful appellate argument.

Petitioner also asserts that appellate counsel should have argued entrapment on appeal or should have argued that trial counsel erred by not raising an entrapment defense. As already explained, there was no basis for trial counsel to have raised the defense. This means that there was also no basis for any claim related to entrapment to be raised on appeal.

Finally, Petitioner contends that appellate counsel should have argued that he was not guilty of the enticement charge because he did not take a "substantial step" toward engaging in any sexual activity with "kimmie14fun." This is based on his argument that there was no evidence that he intended to have sexual contact with her when he went to the bookstore to meet her. This is not correct. Plaintiff's own

statements in the chat logs strongly suggested that he traveled to the bookstore for exactly that purpose. Nevertheless, his motivation in traveling to the bookstore was not really relevant. As Respondent points out, 18 U.S.C. § 2422(b) applies to anyone who "knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense, or attempts to do so." There was no basis for counsel to have argued on appeal that Petitioner did not attempt to persuade, induce, or entice a person he believed to be a minor to engage in sexual activity for which he could be charged with a criminal offense. Again, his own statements during the online chats, viewed in the light most favorable to the government, satisfied this element of the crime. *See United States v. Thomas*, 410 F.3d 1235, 1243-44 (10th Cir. 2005) (evidence of traveling to meet someone could be evidence of intent, but was not required to prove guilt of violating § 2422(b)).

In the end, Petitioner points to nothing to suggest that appellate counsel failed to raise any claim that had merit. Therefore, whether or not counsel properly dealt with Petitioner about the claims to be raised, Petitioner was not prejudiced. His second claim for relief should be denied.

## **Claim Three**

Petitioner's third and final claim for relief is a multi-part claim alleging government and prosecutorial misconduct. His first allegation is that the prosecution violated the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963) by withholding

from the jury the videotape of his arrest at the bookstore (docket no. 50 at 16-17). This is patently incorrect. *Brady* deals only with the requirement that the government provide certain materials as part of discovery in criminal cases. It does not require that the government present any evidence to the jury.

Petitioner's next allegation is that the government violated his rights by illegally intercepting his wire communications with Detective Overcash as she posed as "kimmie14fun." He believes that this conduct violated 18 U.S.C. §§ 1809,[6] 2510, 2518 and 47 U.S.C. § 605 (docket no. 17-18). Again, Petitioner is simply confused. A wire communication can be intercepted and recorded where one of the participants to the conversation gives prior consent. 18 U.S.C. § 2511(2)(c). Detective Overcash was a party to the conversations with Petitioner and agreed to the interception and recording of the online chats. Therefore, the interception and recording of the chats was legal and proper. There was no violation of the statutes that Petitioner cites.

Petitioner next asserts that the prosecution violated his right to confront the witnesses against him as guaranteed by the Sixth Amendment of the United States Constitution because he was not able to cross-examine "kimmie14fun" (docket no. 50 at 18). This claim is frivolous. Detective Overcash, the person Petitioner knew

---

[6] Petitioner cites to this statutory section repeatedly; however, it does not exist. From his description of the statute, it appears he means 50 U.S.C. § 1809, which criminalizes disclosing information obtained though unauthorized electronic surveillance.

as "kimmie14fun" did take the stand and was subjected to cross-examination. This claim should be denied.

Finally, Petitioner argues that the prosecution engaged in misconduct by prosecuting him even though he was factually and legally innocent (*id.* at 19). All of Petitioner's arguments that he was innocent have been discussed and rejected previously. In no way did the government commit misconduct in prosecuting him based on the evidence against him, i.e., the same evidence that fully supported the jury's guilty verdict in his case. This claim should be denied, as should Plaintiff's entire Section 2255 motion.

**IT IS THEREFORE RECOMMENDED** that Petitioner's motion to vacate, set aside or correct sentence (docket no. 49) be **DENIED** and that Judgment be entered dismissing this action.

WALLACE W. DIXON
United States Magistrate Judge

Durham, N.C.
April 12, 2011